## Case No. 7,300.

JESSUP v. CHICAGO & A. R. CO. et al.

[7 Chi. Leg. News. 229.]

Circuit Court, N. D. Illinois. April. 1875.

DRUMMOND. Circuit Judge. Numerous bills have been filed in this court, and in the circuit court of the United States for the Southern district of Illinois. the object of which is to restrain the collection of taxes which have been assessed. and are sought to be levied upon the capital stock and corporate property of corporations in the two districts. In what shall be said at the present time. much will apply to other bills which have been filed in the courts. but as it may be necessary to select some case to serve as a centre around which to group the views we entertain upon the subject. it may be proper to state the facts in the principal case. The bill alleges that the Chicago and Alton Railroad Company had. in its own right. and by virtue of contracts made with the Joliet and Chicago Railroad Company. the Alton and St. Louis Railroad Company.

the St. Louis and Jacksonville Railroad Company, and the Louisiana and Missouri River Railroad Company, various railroad tracks, with rolling-stock and all the usual property employed in the operation of railroads, and that it was using the same in the transportation of persons and property on its road, and the connecting lines; and that, as required by the act of March, 1872, of this state, the Chicago and Alton Railroad Company, with other companies, made and filed with the proper officer, in May, 1873, a sworn list of all its property, setting forth in what the property consisted, and its value. The bill also states that certain officers, town and county assessors, without authority or notice, made additions to the listed value of some of the property; that, then, the county boards of equalization made certain described additions, and that the returns thus revised and equalized, were certified to the auditor of public accounts, who, as required by law, submitted them to the state board of equalization. The bill then sets out various acts of the state board which it claims to be illegal; that, without re-assessment or re-valuation, it added to and deducted from the assessed value of the property as returned, so-as to equalize the value of the property with the value of the same class of property, in other counties, and that it changed the aggregate value of the railroad track, it being in different counties, from $1,369,736.90, as returned, to $4,041,729, and distributed it in the several counties without regard to the actual value therein. The rolling stock, as returned, was of the value of $664,447.93. The board changed it to $1,174,784, which amount was distributed in the same manner, and the board also assessed to the several companies with which the Chicago and Alton Railroad Company made contracts, large sums for rolling stock, when, in point of fact, they had none. The bill then states the rule adopted by the board, for ascertaining the value of the capital stock, over and above the tangible property under the act of March 30, 1872. The board assessed the value of the capital stock of the Chicago and Alton Railroad Company, and all the companies heretofore referred to, with which that company had made contracts; and this was done without notice or hearing, or opportunity to be heard; and the taxes have been extended and levied against the various railroads, in conformity with the rules adopted by the board, for the year 1873, for state, county, town, village, city and special taxes. These seem to be all the allegations of the bill, to which it is necessary to refer. As no denial has been made of them we have to assume they are true; and the question is, do they show a proper case for the interposition of a court of equity, to prevent the collection of the taxes?

The rule laid down by the supreme court of the United States is, that a court of equity will not restrain the collection of a tax, merely because it is illegal; there must be some other independent fact, recognized as a proper ground of jurisdiction. As relief would have to be sought in this case, in a multiplicity of suits against the various collectors, it comes within the rule of the supreme court of the United States. Dows v. City of Chicago, 11 Wall. [78 U. S.] 108. The plaintiff, as a shareholder in the Chicago and Alton Railroad Company, also brings himself within the principle of the case of Dodge v. Woolsey, 18 How. [59 U. S.] 361. The assessment and levy of taxes is an essential faculty of all governments. Upon it the state depends for the exercise of all its functions, and the support of its various officers, legislative, executive and judicial. While the power is indispensable, its exercise is attended with very serious consequences to the citizen. It may take and dispose of his property, in a summary way, in order to raise the necessary means to carry on the government. Still, it is not an absolute power; there are some constitutional restrictions imposed as a protection against its abuse. A tax upon property is the chief source of revenue in this state, but that tax must be levied by valuation, so that every person or corporation shall pay a tax in proportion to the value of the property owned. If it is a tax upon a class of persons, or on those using franchises, it must be by general law, and uniform as to the class on which it operates. Const., art. 9, § 1. It would seem, therefore, that a property tax, assessed for county or municipal purposes, must be by valuation of the property actually or constructively within its territorial limits.

The law already referred to, required the capital stock of all corporate companies of this state, to be so valued, by the board of equalization, as to determine its fair cash value, including the franchise, over and above the assessed value of their tangible property; and the board was authorized to adopt such rules to that end, "as to it may seem equal and just." When the tangible property, or capital stock was assessed, the shares of the capital stock were not to be assessed. Sections 3, 4. In order to ascertain the value of the capital stock and franchise, the board adopted, under this law, the following rule: The value of the shares of the capital stock, and the value of the debt of the company, (excluding the debt of current expenses,) were added together; their sum constituting the value of the capital stock and franchise. In order to ascertain the amount of this, over and above the tangible property, the value of the latter was to be deducted from the sum. The rule does not, in terms, provide for the case of companies (many of which we have before us) where the shares have no value whatever, or, if it does, the results arrived at show the injustice of the rule; because, according to

the allegations of many of the bills before us, the board has found large amounts as the value of the capital stock, including the franchise, over and above the value of all the tangible property of companies, in which the shares of capital stock have no value whatever, and where the companies are not only largely in debt but actually insolvent.

The capital stock of a company is usually divided into a certain number of shares. Technically, the shares may be said to be different from the capital stock, though those who own the shares own also the capital stock, that is, they own the sum of what makes the capital stock. Though it is sometimes expressed differently, it would be more correct to say that the shareholders own the capital stock, and the corporation the capital, or corporate property, for, in a true sense, the corporation cannot be said to be the owner of its capital stock, but only of the tangible property, assets and franchise, which constitute its capital. If, when we speak of "the corporation," we mean the property which it owns, including the franchise, the term is intelligible. In this sense, the distinction between the shares of the capital stock and the capital stock itself, is entirely clear, but, if we discriminate between the corporate property and the capital stock, what power has the corporation over the capital stock? It cannot sell it, as distinct from the property and the franchise. It cannot sell a fractional part of the shares into which it is divided. It can dispose of the property of the corporation, and so, indirectly, impair and perhaps destroy, the value of the capital stock, but the capital stock, as such, it cannot control; that belongs to the shareholders.

There would seem to be a want of precision of language in the opinions of some of the courts and text-writers, in the use of the words "capital stock," as applicable to the right of property in the corporation. It should be, not "capital stock," but "capital;" that is, the property or means of the corporation, including the franchise. This will be the more apparent, if we consider the effect of a levy of a tax upon the shares, and on the capital stock of the corporation. It will be found that if the shares are taxed, and the capital stock, as the sum of the shares, is also taxed, the property is taxed twice; and this the law of 1872 concedes, by providing that where the capital stock is taxed, the shares shall not be, thus obviously recognizing them as, essentially, the same as subject to taxation. There can therefore be no doubt that where the shares, as such, are not taxed, the sum of the shares, as capital stock, can be, provided that by "capital stock," the corporate property is meant. But we apprehend the rule in each case must be the same. If the shares are to be taxed, the taxation must be according to their value. A share worth ten cents on a dollar, in one corporation, cannot be taxed the same as a share in another worth one hundred cents, and if the share has neither a market or an actual value, it cannot be taxed. So, as to the sum of all the shares, which, with the franchise, is sometimes called the capital stock; if worthless, it cannot be taxed. If the capital stock means the corporate property then to tax both is in effect a double tax, and though technically a tax upon the shareholders as such and a tax on the corporate property may be sustained, yet it is inequitable, because in a just sense the shares represent the corporate property. The law declares that the board of equalization is to ascertain the cash value of the capital stock, including the franchise, over and above the assessed value of the tangible property. It would appear that by the act the franchise is to be regarded as property, and, as such, is to be included with the property designated by the name of "capital stock," but it seems to us that a fair construction of the first section of the ninth article of the constitution indicates that where a tax is to be imposed upon a corporation as owning property, the franchise must be taxed, if at all, under the last clause of that section. Although a franchise may, in some cases, possess great value, it may, in others, have only a nominal value. It is something indefinite—intangible; in most instances, of such a character that no fixed valuation can be placed upon it, and therefore, if it is to be, as such, the subject of taxation (as undoubtedly it can be), that taxation must be by general law upon the corporation using it, and uniform as to the class on which it operates. According to that rule, a tax upon a franchise, although its value may be indefinite, may still be said to be just, and to operate fairly upon all persons and corporations using it. The construction which has been given to this clause of the constitution by the board of equalization, and indeed it may be said, by the legislature, has been the source of most of the difficulties that have arisen in the valuation of what is termed the "capital stock of a company." Because they have included the franchise as a part of the valuation, it is difficult, if not impossible, to ascertain by any fixed rule of interpretation, or by the application of any of the facts which arise in a particular instance, the true amount or value of the property to be taxed; because it will be found that there is no possible way of reaching the conclusion at which it appears the board of equalization has, in numerous cases, arrived, than by holding that the franchise itself, and nothing else represents the great value they have placed on the capital stock.

The value of the shares of corporate stock depends upon various considerations—prospective as well as present profits—debts, assets and the franchise. It is manifest that the value of the shares may be nothing, but both debts and assets large, and yet it is difficult to understand how, in such a case,

the capital stock, including the franchise, can be of any value except a nominal value. This may be said to be the normal condition of many of our Western railroad corporations, their capital stock properly so called, being annihilated and nothing left but debts and tangible property, including what we call the franchise. In such cases, to impose a tax upon imaginary property valued at millions, as capital stock independent of the tangible assets, shocks all our notions of right and of equity. The true theory of the taxation of property is, to tax it only once at one time, and to deduct from what a man has what he owes. But there is no legal objection to a law which taxes what he has, without regard to his debts, and it is entirely competent for the legislature to assess a tax upon all the tangible property and assets of railroads, irrespective of the debts owed by them, but it is impossible to comprehend how their debts can be added to anything which they possess, so as to increase the taxable property of the corporation. The law authorized the board to adopt such rules and regulations, as to it seemed just and equitable, but it can scarcely be claimed that such authorization gave the board absolute power to adopt any rules. The rules must be such as do not illegally impair the rights of the citizen to his property and its use. If, by the rules established a tax is imposed, not warranted by law, or upon property which has no existence, in law or in fact, it cannot be permitted to stand.

In the particular case we are considering, the Chicago and Alton Railroad Company owed a bonded debt, chiefly to non-residents, of $4,422,000 and the other companies with which it had made the contracts named, also owed large sums. The board assessed the value of the capital stock of the Chicago and Alton Railroad Company, at $6.312,639; the value of the capital stock of the Joliet and Chicago Railroad Company at $533.907; that of the St. Louis and Jacksonville Railroad Company at $479.577; and that of the Alton and St. Louis Railroad Company at $387,892; all over and above the tangible property and assets; and, according to the rule established by the board in this and in other cases, the value of the debt was added to the value of the shares of the capital stock. We can understand that the debts which they owed. were property in the hands of their creditors —whether in bonds, mortgages, or whatsoever shape they might be. They were credits in the hands of the parties to whom the debts were due, and, as such, they might be taxed, but, certainly it is an anomaly to hold that they can be taxed in the hands of creditors and, at the same time, taxed as property owned by the corporation, because whatever disclaimer may be made on the subject that, judging by the bills before us, seems to have been the practical result of the course pursued.

It follows from what has been said, that in our opinion, the rule which was adopted by the board of equalization to ascertain the value of the capital stock was, in many instances. erroneous, and under the allegations which have been made in all the bills that have come under our notice, filed in court, it has operated to cause an assessment and levy to be made upon property which had no existence. No more striking illustration could be given of this fact than a case we have within our own cognizance, In re Rockford, R. I. & St. L. R. Co. [Case No. 11,978], all the property of which has long been in the possession of this court. Here was a corporation owing ten millions of dollars, whose whole tangible property, upon which any value could be placed, was not worth one-fifth of its bona fide debts. That road was required to pay a tax upon more than a million of dollars, as capital stock, over and above its tangible property. Now it is as clear as the truth in any mathematical problem that there was a tax of some thousands of dollars imposed in this instance on property that in fact had no existence. And the creditors of this company are not only deprived of their just debts, except a small pro rata proportion, but are obliged. in order to preserve what little to them is left, to pay, independently of the tax on the tangible property, a tax upon the stock of the corporation which has no appreciable value, unless the franchise is included and valued at that large sum; and it is manifest that, under such circumstances, the franchise, independent of the actual corporate property, has no other than a nominal value. Another still more striking illustration is the case of the Peoria & R. I. R. Co. [unreported]. whose property is also in this court. An insolvent corporation was here assessed for more than $1,700,000 as capital stock over and above its tangible property,—a road only ninety miles long. We are asked to sanction a rule of the board of equalization that leads to such results. It is not a case of mere irregularity, but one where, in many instances. enormous values have been fixed upon imaginary property, and where creditors, most of whom are non-residents of this state. have been required to pay these taxes, in addition to the great losses they have already suffered, by investing money in this state. This view gives additional strength to what has been said to the kind of tax which should be imposed for the use of a franchise. It is said that it is much more easy to find fault with the rule which was adopted by the board of equalization, than to suggest another which would operate fairly in all cases. It would seem that where the shares of the capital stock have little or no value, and where the debts of the corporation were equal to or largely in excess of, its tangible property and assets. there can be no difficulty in declaring, that the capital stock of the cor-

poration as such, had no taxable value, independent of the tangible property; and would seem equally clear that in the case of an insolvent corporation, which is the condition of most of the railroad companies in this court, there could be no error in saying there was no capital stock independent of the tangible property and assets, which could be taxed. But, however this may be, it seems beyond controversy that a rule which adopts as one of the means of ascertaining the value of the property subject to taxation, the value of the debts of the company, necessarily, lead to erroneous conclusions. There is, however, a very easy way out of all the difficulties which have been suggested, and that is to tax all the property a corporation has. It is here; it can be found, counted and valued just as well as in the case of an individual. The shares held by residents can be legally taxed. The corporations can be taxed for using the franchise in the manner pointed out in the constitution. The tangible property, assets and credits of the company can be taxed. What more is there left? It is only in the search for property which does not exist that difficulties meet us on every hand.

The course pursued by the board of equalization, in reaching its conclusions as to the value of the capital stock, as well as that of the tangible property, seems to us to be peculiarly objectionable, and of such a character as not to commend it to the favor of a court of equity. The law required that every person, company or corporation, owning, operating or constructing a railroad in the state, should return sworn lists or schedules of his or its taxable property, and make out and file with the proper authorities a statement showing the property held for right of way, the length of the main and all side and second tracks and turnouts in each county, city, town and village, in which the railroad existed; in a word, that the officers of the railroad company should return schedules of all the property of every kind, and specifying the nature of the property, as well as its value. These returns were to be under oath, as prescribed by law. As stated in the bills which have come under our observation, all this was done in every instance, so that there was placed before the proper authorities, the specific character and value of the property of the corporation. After all this was done, the board of equalization, without notice to the parties, without a re-assessment or re-valuation, without any hearing, and without giving the parties an opportunity to be heard, arbitrarily raised the value of property, in some instances doubling, and more than doubling, its value, without hearing any additional evidence, without itself possessing any peculiar knowledge upon the subject, and immediately, as it appears, before its final adjournment. Can it be contended that such a proceeding as this, under the circumstances which have

been detailed, can be sanctioned by a court of equity?

The state board of equalization is said to have been a judicial or quasi judicial body. If so, it was a judicial tribunal that not only decided without notice to the parties without giving them a hearing or opportunity to produce evidence, but contrary to the very evidence which the law prescribed should be adduced before it. That is what, according to the allegations of these bills, this board of equalization did. It may be justly said, we think, that where such a tribunal appears to have reached the results which have been brought before us, and caused the imposition of a tax which ought not to be paid, it is an imperative duty of a court of equity, if it has the power, to prevent the doing of so great an injustice. It is of the essence of every judicial tribunal, in order to bind parties sought to be affected by his judgment, that they should be heard and have the opportunity of adducing evidence before it. We think in this respect the board violated the rights of the railroad companies and of their stockholders and creditors.

The constitution of this state declares that the rolling-stock and all other movable property belonging to any railroad company shall be considered personal property. The principal property of a railroad company consists, ordinarily, of the right of way, the railroad track, the stations and other houses and warehouses, the shops connected with the operation of the road, and the various rolling-stock. These bills show that in the assessment and levy of the taxes against the railroad company, the whole property, real and personal, has been distributed along the line of the road; which results in such a levy and assessment of taxes for county and municipal purposes, that property belonging to the railroad in one county, pays a tax in another; for example, if ten miles of the line of a road is situate in one county, in which the road has in addition, property of immense value, as warehouses, station houses and shops for the repair and manufacture of its various machinery, and has ten miles of the line of its road in another county, in which it has none of that kind of property, the distribution which has been made (to say nothing of the difference in rails, as of steel or iron, and right of way) causes taxes for county and municipal purposes assessed on the railroad property in the two counties to be substantially the same. We do not see how all this can be reconciled with the provisions of the constitution which declares that, in the imposition of taxes, every person and corporation shall pay a tax in proportion to the value of his or its property. There may be difficulties connected with the assessment and collection of the taxes upon the rolling-stock, and the movable property of the company, but there can be none as to the fixed property in

the various counties in the state through which the railroad runs.

We have reached these conclusions with great hesitation, and the more because we have found that we differ, in some respects, from the opinion of the supreme court in this state, but the consequences to the property and rights of non-residents by the action of the board of equalization are so very grave, and the injustice, to use no harsher term, which has been done to the property and rights of non-residents has been so great that we feel we cannot, consistent with our own sense of duty, yield our convictions to the opinion of the supreme court of this state, until the supreme court of the United States shall say that we must do so; and it has been mainly with the view of giving the parties who may desire it, the opportunity to test the sense of the latter tribunal, that we have come to the conclusion that we shall sustain the injunctions which have been awarded in the various cases before us.